**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 11 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES J. FITZGERALD,

      Plaintiff-Appellant,

v.

CORRECTIONS CORPORATION OF
AMERICA; PRISON HEALTH
SERVICES, INC.; BOARD OF
COUNTY COMMISSIONERS OF
TULSA COUNTY; TULSA COUNTY
CRIMINAL JUSTICE AUTHORITY;
and JOHN F. JOSEPHSON, M.D.,

      Defendants-Appellees.

No. 03-5029

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 02-CV 518H(C))**

---

Gina Cowley-Crabtree, Tulsa, Oklahoma, for Appellant.

Matthew B. Free (Catherine L. Campbell, Best & Sharp, Tulsa, Oklahoma, and David A. Graves and Jeffrey L. Wilson, The Barkley Law Firm, Tulsa, Oklahoma, with him on the brief), for Defendants-Appellees Corrections Corporation of America, John F. Josephson, M.D., and Prison Health Services, Inc.

Gretchen M. Schilling, Riggs, Abney, Neal, Turpen, Orbison & Lewis on the brief for Defendants-Appellees Board of County Commissioners of Tulsa County and Tulsa County Criminal Justice Authority.

---

Before **TACHA,** Chief Judge**, HOLLOWAY** and **LUCERO**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

Plaintiff-Appellant James J. Fitzgerald broke his hip while he was incarcerated at the David Moss Criminal Justice Center. Fitzgerald alleges that he suffered this fracture after experiencing a diabetes-related seizure and falling down, and he claims that his injuries are a result of the prison authorities' failure to adequately treat his diabetes and failure to provide him with a wheelchair. Fitzgerald further alleges that prison authorities did not secure a medical evaluation for his injuries until over five months after he incurred them, and ultimately failed to provide any treatment for him at all.

Fitzgerald sued the jail's private operator, the Corrections Corporation of America (CCA), as well as the health care provider Prison Health Services (PHS), the Board of County Commissioners of Tulsa County (BCC), the Tulsa County Criminal Justice Authority (TCCJA), and John F. Josephson, M.D. ("Dr. Josephson"), attempting to assert claims for disability discrimination under Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act. He also attempted to assert, against CCA, PHS and Dr. Josephson, claims arising under state law for negligence or medical malpractice and arising under federal law, *i.e.* 42 U.S.C. § 1983, based upon alleged violations of the Eighth Amendment to the United States Constitution. The District Court for the Northern District of Oklahoma granted summary judgment to Dr. Josephson and dismissed the suit pursuant to Fed. R. Civ. P. 12(b)(6) against the remaining defendants. Fitzgerald now appeals.

-2-

As explained later, with respect to the dismissal of Fitzgerald's claims against CCA, PHS, BCC and TCCJA for failure to plead exhaustion of administrative remedies sufficiently as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), we vacate and remand for clarification whether dismissal of Fitzgerald's claims was with or without prejudice. We affirm the grant of summary judgment for Dr. Josephson with respect to the federal claims against him. We reverse the summary judgment for him with respect to the state law claims, and remand for further proceedings..

# I

## BACKGROUND

### A.  Fitzgerald's Allegations

James Fitzgerald was an insulin-dependent diabetic with a history of low blood sugar and seizures. Fitzgerald Amended Petition dated Feb. 22, 2002, Aplt. App. 20, 21, ¶ 2. As a result of his condition, he alleges that he was also particularly susceptible to bone fractures. *Id*.

In August 1999 Fitzgerald was placed in the David Moss Criminal Justice Center. *Id*. at 22-23, ¶ 7. Upon admission, he alleges that he "informed jail staff" that he required a special diet and regular injections of insulin. *Id*. Fitzgerald alleges he further "informed jail staff" that as a result of his diabetic condition, his bones were more susceptible to fracture and that he had broken his leg while being housed in the old Tulsa County jail several years earlier. *Id*. He also "informed jail staff" that he had a history of

low blood sugar, that this caused him to have seizures if his diet and medication were not properly regulated, and that he required use of a wheelchair to prevent him from falling and sustaining injury. *Id*. Fitzgerald alleges that defendants CCH and PHS failed to accommodate his requests. *Id* at 23, ¶9.

On or about September 17, 1999, Fitzgerald alleges that he slipped into a diabetic coma or seizure and fell, fracturing his left upper femur. *Id*. Despite the apparent severity of these injuries, Fitzgerald alleges he was not provided with the opportunity for appropriate medical treatment until February 24, 2000. *Id*. at 23-24, ¶ 10-11. On or about February 24, 2000, Fitzgerald was examined by Dr. John F. Josephson, who was under contract with PHS. *Id*. at ¶ 11. Dr. Josephson reviewed Fitzgerald's medical records and interpreted x-rays with which he was provided. Affidavit of Dr. Josephson dated Oct. 24, 2002, Aplee. Supp. App. at 75. Dr. Josephson offered three treatment options for Fitzgerald's injury. *Id*. Although Dr. Josephson advised that a surgical procedure was the best form of treatment, he also informed PHS that an acceptable course of treatment was to do nothing. Fitzgerald Petition, Aplt. App. at 23-24, ¶ 11. PHS chose to do nothing. *Id*.

In November, 2000, Fitzgerald was transferred into the custody of the Oklahoma Department of Corrections, having lived for fourteen months with an untreated broken hip. *Id*. at 24, ¶ 13 Fitzgerald alleges that he received no medical treatment for his injuries other than non-prescription pain medication during the time that he was in jail, despite "numerous and repeated requests." *Id*.

-4-

**B.  Procedural History**

Fitzgerald first sued Defendants in the District Court of Tulsa County, Oklahoma. The case was subsequently removed to the United States District Court for the Northern District of Oklahoma, on notice by CCA.  The U.S. District Court exercised jurisdiction pursuant to 28 U.S.C. § 1331, since the court was presented with claims arising under 42 U.S.C. § 1983, the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12102 *et seq.*), the Rehabilitation Act (29 U.S.C. §§ 701 *et seq.*), and the United States Constitution.  The District Court also had supplemental jurisdiction under 28 U.S.C. § 1367 over Fitzgerald's state negligence or malpractice claims against CCA, PHS and Dr. Josephson. We have jurisdiction over the appeals involving these claims under 28 U.S.C. § 1291.

In the District Court before Judge Holmes, BCC, CCA, PHS and TCCJA moved to dismiss the claims against them under Fed. R. Civ. P. 12(b)(6), while Dr. Josephson moved for summary judgment under Fed. R. Civ. P. 56(c) and Local Rule 56.1.  The District Court found that Fitzgerald failed to adequately plead exhaustion of administrative remedies before bringing suit, as is required by the Prison Litigation Reform Act. 42 U.S.C. § 1997e(a).  As a result, the court dismissed Fitzgerald's suit entirely against BCC and TCCJA, because no state law claims were asserted against those Defendants. Order (2d) dated Jan. 6, 2003, Aplt. App. 33, 37.  The District Court also granted the motions for CCA and PHS except for the state law claims, which were remanded to the District Court of Tulsa County.  *Id.*

As for the claims against Dr. Josephson, the Federal District Court found first, as with his federal claims against the other defendants, that Fitzgerald was unable to proceed because he failed to exhaust his administrative remedies in compliance with 42 U.S.C. § 1997e. Order (1st) dated Jan. 6, 2003, Aplt. App. 26, 30. Further, the court found Fitzgerald's claims also failed against Dr. Josephson on the merits on the following grounds: First, Fitzgerald failed to provide expert testimony as was generally required under Oklahoma law to demonstrate medical negligence. *Id*. Second, the court concluded that Fitzgerald failed to rebut an expert affidavit introduced by Dr. Josephson, which asserted the doctor "met or exceeded the applicable standard of care." *Id*. at 28. As a result, the court found, this established as uncontroverted fact that Dr. Josephson's care was not substandard. *Id*. at 28, 30. Since Dr. Josephson's conduct was not substandard, it could not constitute either state law medical negligence, or a violation of the ADA, Rehabilitation Act or Eighth Amendment. *Id*. at 30. The court further concluded, as to Fitzgerald's ADA claim, that he had no right to bring a private claim for substandard medical treatment under the ADA in any case. *Id*. The court thus granted summary judgment for Dr. Josephson on the entirety of claims against him. *Id*. at 31.

## II.

## DISCUSSION

### A. Dismissal for Lack of Exhaustion of Administrative Remedies.

A district court's finding of failure to exhaust administrative remedies is reviewed

de novo.  *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)**.**

In *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1208-09 (10th Cir. 2003), we concluded that a plaintiff's failure to meet the exhaustion requirement of § 1997e(a) does not deprive us of subject matter jurisdiction over the action. We further determined that under § 1997e, exhaustion was a pleading burden that falls on the plaintiff, and "a complaint 'that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief can be granted.'"  355 F.3d at 1209 (quoting *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998)).  To successfully allege exhaustion a "prisoner must: (1) plead his claims with 'a short and plain statement. . . showing that [he] is entitled to relief,' in compliance with Fed. R. Civ. P. 8(a)(2); and (2) 'attach[] a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.'"  *Id* (quoting *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000)).

In the instant case, Fitzgerald asserted that he "exhausted those administrative remedies that were available to him, and stated so in his petition, although in more expansive terms.  He stated in detail the administrative remedies he sought."  Aplt. Br. at 17.  Upon review of the record, the extent of Fitzgerald's pleading was the following:

> Plaintiff sought informal and formal relief from officials of CCA & PHS by verbally requesting and filing formal grievances seeking a proper diet and medical attention.  The outcome of these requests for relief was a denial of proper diet and medical attention and/or an inadequate response as is alleged in more detail hereafter.

Fitzgerald Petition, Aplt. App. at 20, ¶ 1.  In his Petition, Fitzgerald then proceeded to

outline the litany of woes he experienced as a result of his injuries. He did not, however, attach any written documentation pertaining to any administrative disposition of any complaints. Fitzgerald offered no description at all of any specific hearing or procedure, nor even referred to a specific interaction with any particular guard or other prison official, except for his consultation with Dr. Josephson. While the District Court's determination in this case preceded our opinion in *Steele*, in granting Defendants' motion to dismiss here the court correctly concluded that Fitzgerald's petition was "facially deficient under the requirements of § 1997e(a) as construed by the Sixth Circuit in *Knuckles El*[.]" Order (2d), Aplt. App. at 37.

The District Court did not specify whether its dismissal of Fitzgerald's claim for lack of exhaustion was with or without prejudice. According to Fed. R. Civ. P. 41(b), unless the court in its order specifies otherwise, such a dismissal "operates as an adjudication on the merits." However, we held in *Steele* that a dismissal based on lack of exhaustion should ordinarily be ***without*** prejudice:

> [f]ailure to exhaust administrative remedies is often a temporary, curable, procedural flaw. If the time permitted for pursuing administrative remedies has not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit (in the event the administrative claim fails to afford him the desired relief).

355 F.3d at 1213 (quoting *Snider v. Melindez*, 199 F 3d 108, 111-12 (2d Cir. 1999)). Under certain circumstances, a district court may, notwithstanding failure to exhaust, proceed to the merits of the claim and dismiss with prejudice if it concludes a party would

be unsuccessful even absent the exhaustion issue.[1]  Here, however, the District Court only decided the exhaustion issue.  Thus, while we uphold its determination that Fitzgerald failed to exhaust, we vacate and remand for the court below to either modify its opinion to specify that the dismissal is without prejudice, or make a determination on the merits within its permissible scope to do so under 42 U.S.C. §1997e(c)(2).

In the event that the District Court determines dismissal should be without prejudice, we note that as Plaintiff's counsel conceded at oral argument, the time frame for recourse to administrative remedies has now probably expired.  We held in *Jernigan* that a plaintiff "may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them and since he may now be time barred from pursuing them, they are exhausted by default."  304 F 3d at 1033.  As a result, unless on remand Fitzgerald can offer evidence of exhaustion not submitted in his initial petition, or alternatively, offer evidence that there was no administrative procedure available in the prison for him to exhaust or that he was somehow prevented from utilizing whatever procedure was available, his federal claims alleged against defendants CCA, PHS, BCC or TCCJA must fail.

**B.  Summary Judgment with respect to claims against Dr. Josephson**

"We review the grant of summary judgment de novo, applying the same standard as the district court."  *Ward v. Utah*, 398 F.3d 1239. 1245 (10th Cir. 2005).

---

[1] *See* our discussion of 42 U.S.C. §1997e(c)(2), *infra* at 10-13.  *See also Steele*, 355 F.3d at 1214.

As in its dismissal of Fitzgerald's claims against Defendants BCC and TCCJA, discussed above, the District Court also considered the exhaustion issue and concluded that Fitzgerald's failure to exhaust provided one independent basis for granting Dr. Josephson's motion for summary judgment. In *Steele*, we noted that "normally, the defendant should raise the exhaustion issue as early as possible in the litigation. If, however, defendant submits a motion to dismiss after filing an answer, the motion should be treated as a motion for judgment on the pleadings." 355 F. 3d at 1212 n. 4. (internal citation omitted). Further, where a factual dispute may preclude dismissal, "[a] motion for summary judgment limited to the narrow issue of exhaustion and the prisoner's efforts to exhaust would then be appropriate." *Id*. at 1212.

Here the District Court did not limit summary judgment to the narrow issue of exhaustion. Rather, the court concluded that in addition to Fitzgerald's failure to exhaust, his claims against Dr. Josephson also failed on the merits. One reason the court gave for this conclusion, regarding both Fitzgerald's federal and state claims, was that the record "clearly establish[ed] that Dr. Josephson's treatment was not substandard" and because the treatment was not substandard, it could not constitute either medical negligence under state law or a violation of the ADA, the Rehabilitation Act, or the United States Constitution. Order (1st), Aplt. App. at 30. This particular conclusion was not well founded. For the reasons discussed below, however, we find that the District Court's grant of summary judgment for Dr. Josephson on Fitzgerald's federal claims should be properly upheld on other grounds. We must reverse and remand, nevertheless, on

Fitzgerald's state law claim against Dr. Josephson.

### 1. Fitzgerald's Federal Claims

We are persuaded by the Seventh Circuit's holding in *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 534 (7th Cir. 1999), that 42 U.S.C. § 1997e(a) requires exhaustion of administrative remedies as a precondition to bringing litigation, and requires dismissal where a litigant has failed to complete such exhaustion. Except in limited circumstances, the plain language of the statutory text does not allow the court to skip ahead to the merits of the suit:

> Application of a law designed to prevent decision on the merits cannot be avoided by making the very decision whose propriety is contested, then declaring the decision-avoidance statute "moot."[. . .] Examining the merits first and then ordering a case dismissed on exhaustion grounds only if the plaintiff is apt to prevail not only would disregard the statutory approach, which puts administrative ahead of judicial inquiry, but also would border on (if it would not transgress) the rule against issuing advisory opinions.

*Id*. This approach also echoes the conclusion of the Sixth Circuit in *Brown v. Toombs*, 139 F.3d 1102, 1004 (6th Cir. 1998):

> The statutory language, "no action shall be brought" until all available remedies are "exhausted," should be interpreted to mean precisely what is obviously intended - that a federal court should not prematurely "decide" the merits of any such action. Federal courts should not adjudicate any such claim until after exhaustion unless the complaint satisfies [42 U.S.C.] § 1997e(c)(2).

In *Perez*, *supra*, the Seventh Circuit further held that such a rule should apply even where it might otherwise serve the interest of judicial economy to resolve the merits of a case

while it is currently before the court. 182 F.3d at 535.[2]

42 U.S.C. § 1997e(c)(2) provides that: "[i]n the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." Dr. Josephson argues that in this case, his motion for summary judgment should be considered analogous to a motion to dismiss for failure to state a claim, since in either case "the court reviews the legal sufficiency of the allegations and, if appropriate, dismisses the claim with prejudice." Br. of CCA, PHS & Dr. Josephson at 28. According to Dr. Josephson, the District Court was therefore within its authority to reach the merits, notwithstanding the lack of exhaustion under § 1997e(c)(2). Dr. Josephson urges that we

---

[2] The Seventh Circuit panel first noted that the Supreme Court had weighed policy arguments for and against the exhaustion requirements of two other statutes in the cases: *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989) (Recovery Act of 1976) and *McNeil v. United States*, 508 U.S. 106 (1993) (Federal Tort Claims Act). The panel concluded:

> But arguments for and against exhaustion do not matter in the end. Judges are not the ones to make the decision; the political branches have made it. Both *Hallstrom* and *McNeil* conclude that statutes forbidding the commencement of a suit are too clear to tolerate revisionism in the name of efficient litigation management.

*Id*. See also *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002):

> While it is true that requiring dismissal may, in some circumstances, occasion the expenditure of additional resources on the part of the parties and the court, it seems apparent that Congress has made a policy judgment that this concern is outweighed by the advantages of requiring exhaustion prior to the filing of suit.

look to *Thomson v. Gibson*, 289 F.3d 1218 (10th Cir. 2002), for an example where this Court proceeded in a similar fashion to that taken by the District Court here.

In *Thomson*, we considered an inmate's claims of Eighth and Fourteenth Amendment violations based on his allegations that he was being provided inadequate portions of food. *Id*. at 1220. After cross-motions for summary judgment, the district court determined that the plaintiff had failed to exhaust administrative remedies regarding his requested injunctive relief and that his monetary damage claims were without merit and should be dismissed as frivolous. *Id*. at 1221. On review we concluded that the record was unclear on the exhaustion issue. *Id*. However, we further concluded that on the merits all of the plaintiff inmate's claims were frivolous and it would therefore be "pointless to remand" the case to the District Court. *Id*. at 1221-22.

Our opinion in *Thomson* did not specifically indicate the statutory grounds on which we reached the merits, but in light of our disposition, it seems clear that the decision was based on 42 U.S.C. § 1997e(c)(2). In *Thomson* the District Court had ordered the Department of Corrections to prepare a report pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), documenting the incidents alleged by Plaintiff Thomson, and the Department's response. *Id*. at 1220-21. This report demonstrated that Thomson was receiving a nutritionally adequate diet. *Id*. at 1222. The fact that another doctor had recommended double-portions merely established a medical difference of opinion, which is not actionable under the Eighth amendment. *Id*. Likewise, Thomson's equal protection claim failed because he did not establish that he was treated differently than other inmates

because of any suspect classification, nor that the differential treatment he did receive was not reasonably related to some penological purpose. *Id.*

*(a) Fitzgerald's Eighth Amendment Claim*

For the purposes of asserting an Eighth Amendment claim under § 1983, we noted in *Thomson* that a "medical need is serious if it has been diagnosed by a doctor, or if it would be obvious to a layperson that doctor intervention was needed." *Thomson*, 289 F.3d at 1222. An untreated broken hip, as alleged by Fitzgerald, could plausibly rise to that level.

To support his motion for summary judgment Dr. Josephson introduced an affidavit from another physician, Dr. Howard, which asserted without any explanation, that in Dr. Howard's opinion the treatment options outlined by Dr. Josephson, including the option of no treatment for Fitzgerald's fractured hip, were "appropriate" and "within the accepted standard of care."[3] Fitzgerald, represented by counsel for the summary

---

[3] Dr. Howard's affidavit stated in full:

I, Brian C. Howard, M.D., of lawful age, being first duly sworn upon oath state:

1. I am a Medical Doctor duly licensed under the laws of the State of Oklahoma and am Board Certified in Orthopedic Surgery.
2. I reviewed the medical records and x-ray films of James Fitzgerald.
3. The medical care rendered by John Josephson, M.D. to James Fitzgerald was appropriate and within the accepted standards of care.
4. All of the options presented to James Fitzgerald for treatment or non-treatment of the injured hip by John Josephson, M.D. exceeded the standard of care.
5. The option of not treating the fracture was an appropriate method for addressing this fracture and within the accepted standard of care.

FURTHER AFFIANT SAYETH NOT.

-14-

judgment proceedings, submitted only a general denial directed to Dr. Howard's affidavit, without other evidence. Since the district court determined that no substandard treatment was recommended, it concluded that Fitzgerald's allegations "cannot form the basis of a § 1983 claim under *Estelle v. Gamble*, 429 U.S. 97 (1976)," as an Eighth Amendment claim. Aplt. App. at 30.

We conclude, as a matter of law, that the affidavit of Dr. Howard, submitted by Dr. Josephson, was insufficient to support summary judgment as to any claims.[4] We have long held that "conclusory allegations without specific supporting facts have no probative value." *See, e.g. Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)); See also *Morgan v.*

---

Dated 10/18/02
S/ Brian C. Howard, M.D

Appellee's Supplemental Appendix at 76.

[4] The dissent says, p. 1, that the majority opinion does not conclude that Fitzgerald's brief in opposition to summary judgment in any way controverted Dr. Howard's affidavit. We disagree. Fitzgerald's Answer to Dr. Josephson's motion for summary judgment stated clearly Fitzgerald's contention that the "proffered affidavit is not evidence, having not been subjected to examination by the plaintiff, or even qualified as expert. Neither is it a learned treatise of which the court could take judicial notice. As such, it should not be considered." Aplee. Supp. App. at 77-78. We are convinced that this challenge to the affidavit, among others, made clear Fitzgerald's position controverting the affidavit.

Along the same line, the dissent argues, p. 2, that Fitzgerald does not raise the issue of admissibility of Dr. Howard's affidavit on appeal; that this issue of the challenge to the affidavit, even if raised below, should be treated as abandoned on appeal. Again, we disagree with the dissent. It is clear that Fitzgerald, in any event, challenges the summary judgment which was based on the insufficient affidavit. Since this is the thrust of his appeal, we cannot agree that waiver of the affidavit's insufficiency can be tortured out of the briefs and arguments of Fitzgerald on appeal.

-15-

*Willingham*, 424 F.2d 200, 201 (10th Cir. 1970) ("[S]ummary judgment cannot rest on purely conclusory statements either in pleading or affidavit form."); and *Claar v. Burlington Northern R. R.*, 29 F.3d 499, 502 (9th Cir. 1994) (upholding refusal of trial court to consider affidavits from physicians which failed to explain the basis for their conclusion that parties had been injured by workplace chemical exposure). Here, Dr. Howard's affidavit provided no basis for his conclusion that the care rendered by Dr. Josephson was "appropriate" or met or exceeded the accepted standard of care. The District Court erroneously relied on Dr. Howard's insufficient affidavit as the central basis for its grant of summary judgment for Dr. Josephson.

We do feel that there was an alternative, sufficient ground for granting summary judgment for Dr. Josephson on the Eighth Amendment claim against him. This is because Dr. Josephson's conduct, as alleged by Fitzgerald, cannot rise to the level of an Eighth Amendment violation. As the Court stated in *Estelle v. Gamble*:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

429 U.S. 97, 106 (1976). The conduct of Dr. Josephson, as alleged, did not amount to an act or omission "sufficiently harmful to evidence deliberate indifference to serious medical needs." Thus the Eighth Amendment claim again Dr. Josephson fails and may properly be disposed of on the merits pursuant to 42 U.S.C. § 1997 e(c)(2).

*(b) Fitzgerald's ADA and Rehabilitation Act Claims*

-16-

Fitzgerald's ADA and Rehabilitation Act claims are also on tenuous grounds. In addition to ruling that Fitzgerald did not receive substandard medical care, the District Court further held, with respect to Fitzgerald's ADA claim: "it is well settled that the ADA does not provide a private right of action for substandard medical treatment." Order (1st), Aplt. App. at 30. The District Court did not comment on the Rehabilitation Act, but for practical purposes the requirements to state a claim under either statute are identical here.

Under either the ADA or the Rehabilitation Act, Fitzgerald is obligated to show that he was "otherwise qualified" for the benefits he sought and that he was denied those "solely by reason of disability." *See, e.g., Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992), *cert. denied*, 507 U.S. 910 (1993). Further, we have held that "the term *otherwise qualified* cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning." *Johnson*, 971 F.2d at 1493-94. As to whether treatment was denied "solely" by reason of disability, the Second Circuit has stated: "Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say. . . that a particular decision was 'discriminatory.'" *United States v. University Hospital*, 729 F.2d 144, 157 (2nd Cir. 1984) (Rehabilitation Act).

Several circuits have expressly concluded that neither the ADA nor the Rehabilitation Act provide remedies for alleged medical negligence. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("ADA does not create remedy for medical

-17-

malpractice"); *Grzan v. Charter Hospital of Northwest Indiana*, 104 F.3d 116, 121, 123 (7th Cir. 1997) (affirming district court's dismissal under Fed. R. Civ. P. 12(b)(6) of plaintiff's section 504 claim because "section 504 [which 'is materially identical to the ADA'] does not provide a federal malpractice tort remedy" and allegations of discriminatory medical treatment do not fit into the four-element framework required by Section 504.").

In the instant case, the principal basis for Fitzgerald's claim against Dr. Josephson is the doctor's recommendation that the prison may "do nothing" as an acceptable course of treatment for Fitzgerald's injuries. Dr. Josephson suggested the non-treatment option as one option, but also recommended surgery as another option. He did not make the final decision to deny treatment. Even if Dr. Josephson had been the final decision-maker, Fitzgerald would not have been "otherwise qualified" for such treatment in the absence of his alleged disability – his alleged disability in this case was the reason why Fitzgerald was seeking medical treatment. These are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or the Rehabilitation Act. Fitzgerald's claims against Dr. Josephson under the ADA and Rehabilitation Acts were therefore properly rejected on the merits under §1997e(c)(2).

2. Fitzgerald's State Law Claims

Fitzgerald's attempt to assert a state law medical negligence claim is hampered by his apparent inability to proffer an expert affidavit as to the proper standard of care. Oklahoma law generally requires expert testimony to establish the standard of care. *See,*

-18-

*e.g., Boxburger v. Martin*, 552 P.2d 370, 373 (Okla. 1976).[5] An affidavit to that effect would normally be required in response to a well-supported motion for summary judgment. Dr. Josephson's motion for summary judgment was not well-supported as to the state law negligence claim, however, because as discussed above, Dr. Josephson's motion relied solely on the affidavit by Dr. Howard that Dr. Josephson's conduct was "appropriate" and "within the accepted standard of care." Because the Howard affidavit was conclusory and insufficient to support a motion for summary judgment, Fitzgerald was not required to produce a contrary affidavit. Therefore the District Court's grant of summary judgment on the medical negligence claim against Dr. Josephson must be reversed.

Upon dismissing Fitzgerald's federal claims against CCA, PHS, BCC and TCCJA, the Federal District Court remanded Fitzgerald's remaining state law claims against those defendants to the District Court of Tulsa County. Aplt. App. at 37. This was within the court's discretion under 28 U.S.C. §1367(c)(3), because the court had dismissed all claims for which it had original jurisdiction.

The District Court initially made a discretionary decision to retain jurisdiction over all claims against Dr. Josephson, and granted him summary judgment on both the federal

---

[5]There is some question whether Oklahoma provides an exception to this requirement where the medical practitioner's lack of care would require only common knowledge and experience to understand and judge it. *See e.g. Boxburger*, 552 P.2d at 373 ("[W]hen a physician's lack of care has been such as to require only common knowledge and experience to understand and judge it, expert testimony is not required to establish that care."). However, we need not address this issue of state law.

-19-

and state claims against him.  On remand, the Federal District Court should reconsider whether further consideration of Fitzgerald's remaining claims against Dr. Josephson is merited in light of the values of judicial economy, convenience, fairness, and comity or whether those claims would be more suitably addressed by the Oklahoma court.

## III

### CONCLUSION

Accordingly, we vacate the dismissal of Fitzgerald's claims against the defendants except Dr. Josephson and remand for clarification whether such dismissals are with or without prejudice.  We affirm the summary judgment rejecting the Eighth Amendment, the Americans with Disabilities Act, and the Rehabilitation Act claims against Dr. Josephson.  We reverse the grant of summary judgment rejecting the state law medical negligence claim against Dr. Josephson and remand for further proceedings on that claim.

*Fitzgerald v. Corrections Corp. of America, et al.*, No. 03-5029

**TACHA**, Chief Circuit Judge, concurring in part, dissenting in part.


I concur in the majority's opinion except for its reversal of the summary judgment for Dr. Josephson on the medical malpractice claim.

In support of his motion for summary judgment, Dr. Josephson attached an affidavit from Dr. Howard, a board-certified orthopedic surgeon who has reviewed the medical records of Mr. Fitzgerald. This affidavit avers that Dr. Josephson's treatment of Mr. Fitzgerald was "appropriate" and within the "accepted standard of care." The District Court concluded that Mr. Fitzgerald failed to present any evidence in his brief in opposition to summary judgment to controvert this claim. Because there was no genuine issue of material fact as to whether Dr. Josephson's treatment failed to meet the applicable standard of care, the court granted summary judgment for Dr. Josephson on the state law medical malpractice claim.

The majority reverses the District Court's grant of summary judgment on this claim. The majority does not, however, conclude that Mr. Fitzgerald's brief in opposition to summary judgment in any way controverted Dr. Howard's affidavit. Instead, the majority holds that this affidavit is "insufficient to support summary judgment as to any claims"—even in the absence of controverting evidence—because the "affidavit provided no basis for [Dr. Howard's] conclusion that the care rendered was 'appropriate.'" Maj. op. at 15. Because Mr. Fitzgerald does not argue on appeal that Dr. Howard's affidavit was inadmissable, this issue is not properly before this Court, and therefore I respectfully

dissent.

If the issue of the admissibility of Dr. Howard's affidavit was preserved below and raised on appeal, this Court would review the District Court's consideration of this evidence for abuse of discretion. *See Goebel v. Denver and Rio Grande Western R.R. Co.*, 346 F.3d 987, 990 (10th Cir. 2003). Mr. Fitzgerald, however, does not raise this issue on appeal.[1] As a result, this issue—even if raised below—should be treated as abandoned on appeal. *See Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived.") (internal quotation marks omitted). Nonetheless, the majority considers this issue *sua sponte* without any discussion of why the traditional rule precluding consideration of issues not raised on appeal is inapplicable to this case.

In deciding this issue, the majority concludes that the affidavit has no evidentiary value with little discussion of why the affidavit is insufficient. Determining whether the conclusions drawn by an expert witness are adequately supported by fact is a complicated inquiry. As the cases cited by the majority make clear, Maj. op. at 15, the question whether an expert's affidavit is admissible turns on the interplay between Federal Rules of Evidence 104(a), 702, 703, and the Supreme Court's interpretation of these rules in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). For example, in *Claar*

---

[1]Mr. Fitzgerald's sole argument for reversing the District Court's grant of summary judgment on the medical malpractice claim is that the facts pleaded in his complaint are sufficient to create a genuine issue of material fact. Because it is well-settled that a plaintiff cannot rely on the facts pleaded in his complaint in opposing summary judgment, *see Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990), I would not reverse the District Court's grant of summary judgment on this basis.

*v. Burlington Northern R.R. Co.*, 29 F.3d 499, 500–02 (9th Cir. 1994), the district court granted the defendant's motion for summary judgment on the ground that the physicians' affidavits submitted in support of the plaintiff were inadmissable because they failed to state the basis on which the experts drew their conclusions. In affirming, the Ninth Circuit concluded that, although the affidavits could not have been found inadmissible under Rule 703, the Supreme Court's decision in *Daubert* made clear that the affidavits were properly excluded under Rule 702. *Id.* The majority, however, concludes that Dr. Howard's affidavit is insufficient without expressly holding that, in light of *Daubert* and the Federal Rules of Evidence, the District Court abused its discretion in considering this expert testimony.

Mr. Fitzgerald does not challenge the admissibility of Dr. Howard's affidavit on appeal. As such, I would not reach the issue of whether the affidavit was sufficient as a matter of law. Furthermore, the majority concludes that the District Court erred in considering the affidavit without applying our normal abuse-of-discretion review. I respectfully dissent.