**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SCOTT B. SULLIVAN,

    Plaintiff - Appellant,

v.

UNIVERSITY OF KANSAS HOSPITAL
AUTHORITY; UNIVERSITY OF
KANSAS PHYSICIANS; JUDSON
BERTSCH; LARRY CORDELL; PHILLIP
HYLTON; TIFFANY WILLIAMS;
MOHSEN TAHANI; MISSION FAMILY
HEALTH CARE; BRADLEY S.
JACKSON; MARK O. SCOTT;
BRANDON WELSH; JOHN LEEVER;
NEUROSURGERY OF SOUTH KANSAS
CITY; JOHN CLOUGH; ELLEN KAY
CARPENTER; BOB PAGE; KEVIN
BROWN; UNITED STATES
DEPARTMENT OF JUSTICE,

    Defendants - Appellees.

_____

SCOTT B. SULLIVAN,

    Plaintiff - Appellant,

v.

HCA HEALTHCARE, INC.; FAMILY
HEALTH MEDICAL GROUP OF
OVERLAND PARK, LLC; HERBERT
MCCOWEN; RICHARD RUIZ; DIANA
RUTHERFORD; SUSAN WILLIAMS;
STEVE SULLIVAN; LISA SULLIVAN;
MICHELLE SAFFORD; JANET

No. 19-3213
(D.C. No. 2:19-CV-02078-JAR-TJJ)
(D. Kan.)

No. 19-3215
(D.C. No. 2:19-CV-02034-JAR-TJJ)
(D. Kan.)

GEREAU; JONATHAN ALAN KECK, II;
MENORAH MEDICAL CENTER;
BRADLEY MCILNAY; UNITED
STATES DEPARTMENT OF JUSTICE,

     Defendants - Appellees.

_____

SCOTT B. SULLIVAN,

     Plaintiff - Appellant,

v.

ADVENTIST HEALTH SYSTEMS;
GENERAL CONFERENCE
CORPORATION OF SEVENTH-DAY
ADVENTISTS; SHAWNEE MISSION
MEDICAL CENTER; SHAWNEE
MISSION PRIMARY CARE; NEW
HAVEN SEVENTH-DAY ADVENTIST
CHURCH,

     Defendants - Appellees,

and

NEUROSURGERY ASSOCIATES; KEN
BACON; REBECCA MESSERLI;
HARLOW SCHMIDT; AMANDA
DISKIN; MARK FENTON; GREGORY
SWEAT; STEVEN HESS; DOUGLAS
ELSEY; DOUG LUDWIG; STEVE
IRVIN,

     Defendants.

No. 19-3216
(D.C. No. 2:18-CV-02606-JAR-TJJ)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of

_____

Before **TYMKOVICH**, Chief Judge, **MURPHY** and **PHILLIPS**, Circuit Judges.
_____


In these three appeals, Scott B. Sullivan contests the dismissal of his pro se actions against a multitude of defendants, all of whom he claims wronged him in his efforts to obtain medical treatment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I

Mr. Sullivan initiated three separate lawsuits against his healthcare providers, family members, and church figures for actions they allegedly took while he sought treatment for Tarlov Cyst Disease and other ailments. Although he named different defendants in each case, he asserted many of the same claims that the district court determined suffered from similar legal defects. For ease of analysis, we discuss Mr. Sullivan's claims together as appropriate, without distinguishing between the lawsuits, but the lawsuits and these appeals have not been consolidated and they retain their independent identities. While we liberally construe Mr. Sullivan's pro se materials, we do not act as his advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840-41 (10th Cir. 2005). We consider only those arguments that Mr. Sullivan has adequately presented in his opening briefs. *See Bronson v. Swensen*, 500 F.3d 1099,

---

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1104 (10th Cir. 2007) ("An appellant's opening brief must identify appellant's contentions and the reasons for them, with citations to authorities and parts of the record on which the appellant relies." (internal quotation marks omitted)).

Mr. Sullivan filed lengthy amended complaints, generally alleging he was disabled after suffering a workplace injury in January 2012 and defendants have since engaged in fraud, racketeering, and disability discrimination to deny him treatment. He averred that rather than treat his condition, his healthcare providers suspected him of being mentally ill and seeking drugs. He cited numerous statutes and causes of action from which the district court distilled claims for violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12132 and 12210; the Rehabilitation Act, 29 U.S.C. § 794(a); the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. § 1962; 42 U.S.C. § 1981; and obstruction of justice, 18 U.S.C. §§ 1501-21. Mr. Sullivan also sought mandamus relief under 28 U.S.C. § 1361 to compel the Department of Justice (DOJ) to investigate and prosecute his claims, and he brought several state-law claims as well.

In three separate decisions, the district court dismissed most of Mr. Sullivan's federal claims under Fed. R. Civ. P. 12(b)(6). The court also denied mandamus relief and Mr. Sullivan's summary requests for leave to amend his complaints if his allegations were determined to be deficient. Additionally, the court declined to exercise supplemental jurisdiction over the state-law claims, and, in No. 19-3216, determined that certain individual defendants were subject to dismissal for lack of timely service. Finally, Mr. Sullivan moved to alter or amend the judgments under Fed. R. Civ. P. 59(e), but the district court denied his motions. These appeals followed.

4

II

*A. Dismissal Under Rule 12(b)(6)*

We review de novo the district court's dismissal under Rule 12(b)(6). *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). We "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to [Mr. Sullivan]." *Id.* (internal quotation marks omitted). But "we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* (internal quotation marks omitted). "[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted).

*1. ADA & Rehabilitation Act*

Mr. Sullivan first disputes the district court's dismissal of his ADA and Rehabilitation Act claims.[1] The ADA and the Rehabilitation Act prohibit discrimination and the denial of services "by reason of" an individual's disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). The elements of an ADA claim are:

(1) [the plaintiff] is a qualified individual with a disability;

(2) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and

---

[1] In No. 19-3215, the district court determined that Mr. Sullivan's ADA and § 1981 claims were time-barred under the governing statute of limitations. Because we consider these claims on the merits, we need not address the statute of limitations issue.

(3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1295 (10th Cir. 2016) (internal quotation marks omitted). The elements of a Rehabilitation Act claim are: "(1) that the plaintiff is disabled under the Act; (2) that he would be 'otherwise qualified' to participate in the program; (3) that the program receives federal financial assistance (or is a federal agency); and (4) that the program has discriminated against the plaintiff." *McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004). The requirements for stating a claim under these statutes are substantially the same. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005); *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 608 n.7 (10th Cir. 1998).

The district court concluded that Mr. Sullivan failed to allege he is "otherwise qualified" because his claims are predicated on the denial of treatment for his medical condition. Indeed, such claims are generally not cognizable under the ADA and the Rehabilitation Act. As we explained in *Johnson ex rel. Johnson v. Thompson*, 971 F.2d 1487, 1493 (10th Cir. 1992), when a plaintiff claims disability discrimination based on the failure to receive treatment for a medical condition, "[s]uch a plaintiff must prove that he or she was discriminatorily denied medical treatment because of [a medical condition] and, at the same time, must prove that, in spite of the [medical condition], he or she was 'otherwise qualified' to receive the denied medical treatment." This presents a dichotomy, however, because "if such a person were not so handicapped, he or she would not need the medical treatment and thus would not 'otherwise qualify' for treatment." *Id.*

6

Here, the district court recognized that Mr. Sullivan could not premise his claims on the denial of treatment because he would not be "otherwise qualified" for treatment absent his medical condition. *See Fitzgerald*, 403 F.3d at 1144 ("[T]he term *otherwise qualified* cannot ordinarily be applied in the comparatively fluid context of medical treatment decisions without distorting its plain meaning . . . . Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say that a particular decision was discriminatory." (ellipsis and internal quotation marks omitted)). Mr. Sullivan disagrees, arguing that "'[o]therwise qualified' does not mean that you would be qualified if you did not have the disability. It means that even though you have the disability, you meet the other qualifications." No. 19-3213, Aplt. Br. at 20; No. 19-3215, Aplt. Br. at 18. But he fails to explain how he would qualify for treatment if he did not have a medical condition. Although he contends the precise term "otherwise qualified" does not appear in the text of § 12132 and thus is irrelevant to his ADA claims, he ignores that the ADA and Rehabilitation Act employ the same substantive standards, *see Fitzgerald*, 403 F.3d at 1144; *Nielsen*, 162 F.3d at 608 n.7.

Mr. Sullivan's claims under 42 U.S.C. § 12210(c) suffer from similar defects. That provision prohibits the denial of drug-rehabilitation services based on an individual's illegal drug use if the individual is "otherwise entitled" to those services. *Id.* But Mr. Sullivan failed to allege he is entitled to such services or explain how he would be so entitled absent his medical condition.

Last, Mr. Sullivan suggests the district court erred in rejecting his medical malpractice claims under the ADA. The claims are based on his healthcare providers'

alleged failure to properly diagnose and adequately treat his medical condition.  The district court correctly observed, however, that these types of "purely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act," *Fitzgerald*, 403 F.3d at 1144.  The district court therefore correctly dismissed these claims.

### 2. *42 U.S.C. § 1981*

Mr. Sullivan next challenges the dismissal of his claims under § 1981, which provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens," 42 U.S.C. § 1981(a).  "[A] § 1981 claim for interference with the right to make and enforce a contract must involve the actual loss of a contract interest . . . ." *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1195 (10th Cir. 2002) (internal quotation marks omitted).  The district court dismissed Mr. Sullivan's claims, ruling he failed to allege the impairment of any contract interest.

On appeal, Mr. Sullivan provides a lengthy historical perspective of another statute, 42 U.S.C. § 1985, but he does not address the district court's rationale for dismissing his § 1981 claims.  *See Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) ("The first task of an appellant is to explain to us why the district court's decision was wrong.").  He does contend the district court should have liberally construed his allegations to infer the existence of contracts because his healthcare providers collected copays, billed insurance, created debts, issued liens, and created medical records.  *See* No. 19-3213, Aplt. Br. at 31; No. 19-3215, Aplt. Br. at 29.  Yet he fails to explain how these activities reflect the loss of a contract interest.  In any event, the

8

district court correctly recognized that his claims of disability discrimination do not fall within the scope of § 1981. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1411 (10th Cir. 1997). Accordingly, the district court properly dismissed these claims.

### 3. RICO

Mr. Sullivan also claimed violations of the RICO statute. To state a RICO claim, Mr. Sullivan was obliged to plausibly allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003) (internal quotation marks omitted). The district court concluded Mr. Sullivan offered only conclusory allegations that failed to allege a pattern of criminal racketeering activity.[2] Mr. Sullivan disputes this conclusion, but the district court properly dismissed his claims.

The RICO statute defines "racketeering activity" as certain enumerated crimes. *See* 18 U.S.C. § 1961(1); *see also Resol. Tr. Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993) ("RICO defines 'racketeering activity' as any act in violation of specified state and federal crimes . . . ."). Mr. Sullivan, however, offered only conclusory allegations of criminal conduct, untethered to any specific factual averments. For example, he alleged "wide spread racketeering engaged in by health care organization[s], and with cooperation between individual health care providers in enterprises in fact." No. 19-3213, R. at 97, para. 115. He also alleged his family members "engaged in persistent abuse, neglect, defamation, intimidation, and racketeering for the purposes of

---

[2] The court also determined Mr. Sullivan failed to allege an enterprise, but our disposition obviates any need to consider this element.

9

interference with [his] access to benefits under his private health insurance policy."
No. 19-3215, R. at 96-97, para. 207 (alleging his family). And he alleged his healthcare providers and church figures conspired to deny healthcare benefits to disabled or injured persons, and then engaged in wire and mail fraud to discharge these unidentified persons from the hospital. *See* No. 19-3216, R. at 60, para. 58. But these conclusory statements are wholly insufficient to plausibly allege defendants engaged in criminal racketeering activity as defined by § 1961(1). Mr. Sullivan insists he alleged the "predicate act of 'obstruction of justice' which [can] give rise to RICO rights to relief." No. 19-3213, Aplt. Br. at 27 (internal quotation marks omitted); No. 19-3215, Aplt. Br. at 26 (internal quotation marks omitted); *see also* No. 19-3216, Aplt. Br. at 37 ("[O]bstruction of justice, witness intimidation, and interference with contracts . . . give rise to claims under both Federal and State RICO statutes."). Yet he provided no factual allegations to support his otherwise conclusory statements that defendants obstructed justice.

Mr. Sullivan also asserts he alleged "the predicate acts of 'wire and mail fraud.'" No. 19-3216, Aplt. Br. at 15. Again, however, his allegations are conclusory. His reliance on mail and wire fraud required that he "plausibly allege the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and that [defendants] communicated, or caused communications to occur, through the U.S. mail or interstate wires to execute the fraudulent scheme." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016) (internal quotation marks omitted). Moreover, "because Fed. R. Civ. P. 9(b) requires a plaintiff to plead mail and wire fraud with particularity, [he] must set forth the

10

time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* (internal quotation marks omitted). Mr. Sullivan alleged no such facts, and consequently, his claims were properly dismissed.

### 4. *Obstruction of Justice*

Mr. Sullivan also claimed defendants obstructed justice in violation of multiple statutes, including the ADA, the Rehabilitation Act, the RICO statute, and 42 U.S.C. §§ 1981-88. For example, he alleged the University of Kansas Medical Center obstructed justice by invoking sovereign immunity. *See* No. 19-3213, R. at 165, para 386. He alleged his family members engaged in a "pattern of abusive, . . . deceptive, and unconscionable acts intended to obstruct [his] access to medical care for personal, vindictive, retaliatory, and even political reasons." No. 19-3215, R. at 79, para. 118. And he alleged there was "obstruction of all forms of justice as an expression of political, religious, ideological or personal motivations." No. 19-3216, R. at 80, para. 149.

The district court ruled that Mr. Sullivan offered only vague and conclusory allegations and, in any event, there is no private right of action for obstruction of justice under 18 U.S.C. §§ 1501-21. Mr. Sullivan disputes this conclusion, but the district court properly dismissed his claims. Indeed, the statutory provisions outlawing obstruction of justice do not provide a private cause of action. *See, e.g.*, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir. 1997), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012). And to the extent Mr. Sullivan claimed obstruction under another statute or as a predicate act of racketeering activity, his conclusory allegations lacked any factual support to state a plausible claim for relief.

11

*B. Mandamus Under 28 U.S.C. § 1361*

We next consider Mr. Sullivan's request for mandamus relief under 28 U.S.C. § 1361 to compel the DOJ to investigate and prosecute his claims. Although the grant or denial of relief is committed to the district court's discretion, a plaintiff must demonstrate "(1) that he has a clear right to relief, (2) that the [defendant's] duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy." *Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005). The district court ruled that Mr. Sullivan failed to show a clear right to relief because the DOJ's investigative function is discretionary. *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1235 (10th Cir. 2005) ("Mandamus relief is available only to compel a government officer to perform a duty that is ministerial, clearly defined, and peremptory as opposed to duties within the officer's discretion." (internal quotation marks omitted)). Indeed, "the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General. Mandamus will not lie to control the exercise of this discretion." *Powell v. Katzenbach*, 359 F.2d 234, 234 (D.C. Cir. 1965) (per curiam). The district court properly denied relief under § 1361.

*C. Leave to File Amended Complaints*

Mr. Sullivan next challenges the district court's denial of leave to file second amended complaints. After he amended his complaints once as a matter of course, *see* Fed. R. Civ. P. 15(a)(1), Mr. Sullivan filed responses to the motions to dismiss in which he made several statements asking to amend his pleadings if the court determined his claims were deficient, although he did not specify what other facts he might allege. The

12

district court denied leave to amend, concluding that amendment would be futile and prejudice defendants. Mr. Sullivan now contends the district court should have granted leave to amend because he could not have known which of his allegations were deficient.

"[L]eave to amend a complaint shall be freely given when justice so requires, [but] a district court may refuse to allow amendment if it would be futile." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.* (internal quotation marks omitted). Although we generally review the denial of leave to amend for an abuse of discretion, when the denial "is based on a determination that amendment would be futile, our review for abuse of discretion includes de novo review of the legal basis for the finding of futility." *Cohen v. Longshore*, 621 F.3d 1311, 1314 (10th Cir. 2010) (internal quotation marks omitted). "[A] request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it." *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.,* 181 F.3d 1180, 1186-87 (10th Cir. 1999). "[A] bare request in . . . response to a motion to dismiss that leave be given to . . . amend the[] [c]omplaint" is "insufficient." *Id.* at 1186 (internal quotation marks omitted).

Here, Mr. Sullivan failed to properly seek leave to amend. He simply made perfunctory, conditional requests in his responses to the motions to dismiss that he be allowed to amend if the court found his allegations deficient. But he failed to provide a proposed amended complaint, file a formal motion seeking leave to amend, or give any

13

indication of the basis for his requests. These omissions prejudiced the opposing parties by depriving them of notice of what the potential new allegations or claims might have been. They also hampered the district court's ability to "comprehend the basis of the [requests] and deal with [them] fairly." *Id.* (internal quotation marks omitted). Under these circumstances, the district court was under no obligation to recognize the requests.

Moreover, Mr. Sullivan still provides no explanation as to how amendment would have cured the deficiencies in his complaints. Instead, he acknowledges that his "pleadings are all obviously incomplete" due to his medical condition. No. 19-3216, Aplt. Br. at 43. He also asserts that he "needed feedback to know what amendments to make." No. 19-3213, Aplt. Br. at 34. He contends he "had no way of knowing which inferences the court would or would not make until [it] made them." No. 19-3215, Aplt. Br. at 32. While we sympathize with Mr. Sullivan's plight, he must comply with the federal rules of procedure, as all pro se litigants must. Based on our review, we agree with the district court's conclusion that amendment would have been futile.[3]

*D.  No. 19-3216:  Failure to Timely Serve Individual Defendants*

In No. 19-3216, the district court determined that certain individual defendants were subject to dismissal because Mr. Sullivan failed to effect timely service. On appeal, Mr. Sullivan contends the district court should have granted him an extension of time to serve these defendants.

---

[3] To the extent Mr. Sullivan suggests the district court should have appointed counsel *sua sponte*, the court was under no obligation to do so. *See Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 749 (10th Cir. 2009) (unpublished).

14

"We review the district court's dismissal for untimely service for an abuse of discretion." *Espinoza v. United States*, 52 F.3d 838, 840 (10th Cir. 1995). Under Fed. R. Civ. P. 4(m), a plaintiff has 90 days after filing his complaint to effect service. When a plaintiff fails to do so,

> [t]he preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service. . . . If good cause is shown, the plaintiff is entitled to a mandatory extension of time. If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted. At that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service.

*Espinoza*, 52 F.3d at 841.

Mr. Sullivan failed to show good cause warranting a mandatory extension. He filed his original complaint on November 9, 2018, but, contrary to his assertion, did not identify or provide addresses for the individual defendants. Although the district court directed him to provide complete service addresses for all defendants, there is no indication he did so. Thereafter, Mr. Sullivan amended his complaint on March 12, 2019, and identified the individual defendants, but at a scheduling conference on June 20, 2019, he acknowledged he still had failed to timely serve them and thus the court directed him to seek an extension if he intended to join them, *see* No. 19-3216, R. at 240. Again, there is no indication in the record that he ever did. Mr. Sullivan fails to show he was entitled to a mandatory extension.

Neither does Mr. Sullivan show he was entitled to a permissive extension. The factors to be considered in weighing a permissive extension include Mr. Sullivan's

15

pro se status, the possibility of prejudice to the defendants, and the potential that the statute of limitations has run on the claims. *See Espinoza*, 52 F.3d at 841-42. The district court concluded that a permissive extension was unwarranted because Mr. Sullivan failed to state any plausible claims for relief. In light of our disposition, we perceive no abuse of discretion.

### E. Motions to Alter or Amend the Judgments

Finally, Mr. Sullivan contends the district court abused its discretion in denying his Fed. R. Civ. P. 59(e) motions to alter or amend the judgments. *See Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (reviewing for abuse of discretion). "A court abuses its discretion when basing its decision on an erroneous legal conclusion." *Id.* "Grounds warranting a motion to [alter or amend under Rule 59(e)] include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A Rule 59(e) motion "may be granted when the court has misapprehended the facts, a party's position, or the controlling law." *Nelson*, 921 F.3d at 929 (internal quotation marks omitted). But a Rule 59(e) motion "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012.

Mr. Sullivan's Rule 59(e) motions did not articulate any appropriate basis for relief. Instead, his motions emphasized the severity of his symptoms and reiterated arguments that the district court had already rejected. Under these circumstances,

16

absent any showing that the court based its decisions on erroneous legal conclusions, the district court did not abuse its discretion in denying relief.

III

The judgments of the district court are affirmed.

Entered for the Court


Timothy M. Tymkovich
Chief Judge