FILED
United States Court of Appeals
Tenth Circuit

October 9, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MICHAEL ARNOLD,

    Plaintiff - Appellant,

v.

DEAN GONZALEZ; NADIA
GATCHELL; WASHINGTON COUNTY
SHERIFF JOHN STIVERS,

    Defendants - Appellees.

No. 19-1393
(D.C. No. 1:18-CV-02193-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McHUGH**, and **EID**, Circuit Judges.
_____

Michael Arnold sued his parole officers, Dean Gonzalez and Nadia Gatchell,

because they sent him to jail for parole violations and did not arrange for his release

to attend scheduled orthopedic appointments. And he sued John Stivers, who

operated one of the jails that housed him, because Stivers allegedly "established or

approved" a policy "not to provide medical care for injuries to inmates which

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

occurred prior to their detention," among other things. Aplt. App. at 12. Arnold claimed that these actions violated the Eighth Amendment's prohibition on cruel and unusual punishment and sought damages under 42 U.S.C. § 1983. The district court dismissed his claims under Fed. R. Civ. P. 12(b)(6). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

### A. Alleged Facts

Arnold alleged the following facts in his complaint.

Doctors diagnosed him with a broken foot on September 5, 2016. He secured an appointment to have a cast placed on the foot at a later date.

Before Arnold's appointment, Gonzalez subjected him to a short-term detention under Colorado's Sure and Swift Program, which "allow[ed] a detention of 1 to 5 days as a sanction for minor violations of parole rules." Aplt. App. at 12. Gonzalez "promised to arrange for him to be released to attend the appointment." *Id.* at 13. But Gonzalez failed to do so, "thus preventing [Arnold] from receiving care and treatment of his broken foot." *Id.*

When he got out of jail, Arnold made another "appointment to have his foot placed in a cast." *Id.* Gonzalez then had Arnold detained again under the Sure and Swift Program. "Gonzalez promised to arrange for [Arnold] to attend the appointment . . . ." *Id.* But Gonzalez did not do so.

Gatchell later took over Arnold's parole supervision. "[S]he was informed of [Arnold's] injury and that because of two Sure and Swift [P]rogram [detentions] his

2

foot had not been treated." *Id.* at 14. After Arnold's second release, Gatchell arrested him for "missing an appearance date and changing his address without permission." *Id.* at 13. "Gatchell had the opportunity to provide release for [him] to obtain treatment." *Id.* at 14.

Arnold landed in the Washington County Jail on October 19, 2016. The jail's "medical unit" "learned through its intake evaluation that [Arnold] had serious medical needs which required specialized care." *Id.* But officials "refused to provide or arrange for the needed care." *Id.* Arnold "was told that it was the policy of the Washington County Jail under the direction of Sheriff Jon Stivers not to provide care for injuries suffered by detainees before becoming an inmate." *Id.* at 14–15.

Arnold spent 55 days in the Washington County Jail. At some point after his release, Gatchell arrested him again. "[D]espite knowledge of [Arnold's] need for care of his foot," she "failed to arrange for the needed care." *Id.* at 15.

## B. Procedural History

Defendants moved to dismiss Arnold's claims under Fed. R. Civ. P. 12(b)(6) and the doctrine of qualified immunity. The district court granted Defendants' motions. It reasoned that extant law did not clearly establish liability for parole officers who fail to arrange for offenders' medical care upon parole revocation. It also took judicial notice of the Washington County Jail's policies regarding inmate heath care and reasoned that Arnold's allegations that "Stivers promulgated a policy that prevented [him] from getting medical treatment for his ankle injury are belied by

3

the policies themselves." Aplt. App. at 131. And it rejected Arnold's other arguments that he stated a claim against Stivers.

## II. Discussion

### A. Standard of Review and Rule 12(b)(6)

"This court reviews de novo a district court's grant of a motion to dismiss based on qualified immunity." *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010). We "accept all the well-pleaded allegations of the complaint as true and . . . construe them in the light most favorable to the plaintiff." *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (internal quotation marks omitted).

"The usual rule is that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss." *Id.* (internal quotation marks omitted). But "[t]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (internal quotation marks omitted).

### B. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "When a defendant raises the qualified-immunity defense, the plaintiff must . . . establish (1) the defendant violated a federal statutory or constitutional right and (2) the right was clearly established at the time of the defendant's conduct." *Ullery v. Bradley*, 949 F.3d 1282,

4

1289 (10th Cir. 2020). The court has discretion to decide which of the two prongs of the qualified immunity analysis to address first. *Pearson*, 555 U.S. at 236.

To determine whether a right is clearly established, "[w]e look to see if existing precedent placed the statutory or constitutional question beyond debate." *Estate of Reat v. Rodriguez*, 824 F.3d 960, 965 (10th Cir. 2016) (ellipsis and internal quotation marks omitted). "[A] right is clearly established when a precedent involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) (internal quotation marks omitted). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotation marks omitted). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (internal quotation marks omitted).

## C. Claims Against Defendants Gonzalez and Gatchell

Arnold claimed parole officers Gonzalez and Gatchell violated his Eighth Amendment rights by failing to arrange for him to leave jail to attend medical appointments. But Arnold does not cite any case, from any jurisdiction, holding that parole officers have a constitutional duty to arrange for or accommodate an offender's medical care when that offender is incarcerated for a parole violation.[1]

---

[1] Arnold does cite a Colorado Department of Corrections regulation for the proposition that parole officers have discretion to determine an offender's release date under the Sure and Swift Program and that in deciding when to release an offender, "the [parole officer] should take in consideration the severity of the

5

He instead cites two cases only for the general proposition that "[p]rison official[s] violate the Eight[h] Amendment's prohibition against cruel and unusual punishment when they act deliberately and indifferently to serious medical needs of prisoners in their custody." Aplt. Opening Br. at 15 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)); *see also id.* at 14 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This does not suffice. The cases Arnold cites involved prison officials who were deliberately indifferent to the serious medical needs of inmates under their supervision or care.[2] They did not involve parole officers or claims that a prisoner should be released from jail to attend a medical appointment. The cases Arnold cites therefore did not involve "*materially similar conduct*," *Apodaca*, 864 F.3d at 1076 (internal quotation marks omitted), and do not apply

violation as well as minimizing the impact to stabilizing factors such as employment." Aplt. Reply Br. at 7 (quoting Colo. Dep't of Corr., Administrative Regulation 250-76(IV)(E) (2014) (superseded 2015, 2018, and 2019)). He argues, without support, that the regulation's reference to "stabilizing factors" should be read to include medical appointments. But the regulation does not reference medical appointments and it does not aid his argument that parole officers have a clearly established *constitutional* responsibility to ensure that offenders do not miss previously-scheduled medical appointments as a result of their incarceration. *See Romero v. Bd. of Cty. Comm'rs*, 60 F.3d 702, 705 (10th Cir. 1995) ("[V]iolations of state law and police procedure generally do not give rise to a § 1983 claim.").

[2] In *Estelle*, the plaintiff alleged prison officials placed him in solitary confinement when he refused to work due to back pain and high blood pressure, and guards refused his requests to see a doctor after he "experienced pain in his chest, left arm, and back." 429 U.S. at 101. In *Hunt*, the plaintiff alleged that a prison doctor denied him access to prescribed insulin for more than a year and that he suffered a heart attack in prison due to inadequate care delivered by prison officials for his diabetes and hypertension. 199 F.3d at 1223.

"with *obvious clarity*," *id.* (internal quotation marks omitted), to the actions of Arnold's parole officers. We agree with the district court that "because [Arnold] has failed to meet his burden of establishing that Defendants Gonzalez and Gatchell have violated clearly established law . . . they are entitled to qualified immunity." Aplt. App. at 137.

## D. Claim Against Defendant Stivers

Arnold alleged that Stivers "established or approved" a policy "not to provide medical care for injuries to inmates which occurred prior to their detention in the Washington County Jail." *Id.* at 12.

The district court took judicial notice of the Washington County Sheriff's Office Policies 701 and 702. It noted that these policies contain numerous provisions that facilitate inmates' access to health care. The district court then observed:

> Importantly, neither Policy 701 nor 702 contains a provision that *prevents* an inmate from receiving medical care for injuries that occurred prior to their detention at the Washington County Jail. Thus, the allegations . . . that . . . Stivers promulgated a policy that prevented [Arnold] from getting medical treatment for his ankle injury are belied by the policies themselves.

*Id.* at 131. The district court concluded that Arnold "failed to state a claim that . . . Stivers 'promulgated, created, implemented or possessed responsibility for the continued operation of a policy' that prevented [Arnold] from obtaining medical treatment for his . . . injury." *Id.* at 134 (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)).

7

The district court also rejected Arnold's arguments that he stated a claim against Stivers because Stivers allegedly:

(1)    chose not to enforce the jail's policies regarding medical care;

(2)    told Arnold he would have to pay for an evaluation by an orthopedic specialist;

(3)    improperly delegated the duty to decide the appropriate level of care to medical staff; and

(4)    knew about Arnold's serious medical need and failed to immediately arrange for an orthopedic appointment.

The district court reasoned that:

(1)    Arnold's allegation that Stivers chose not to enforce the jail's policy regarding medical care was "entirely different from the allegations in [Arnold's complaint] that . . . Stivers 'established or approved' of a policy 'not to provide medical care for injuries to inmates that occurred prior to their detention in the Washington County Jail,'" *id.* at 131 (quoting *id.* at 12 (brackets omitted));

(2)    Arnold's complaint was "devoid of any allegation . . . that the policy requiring an inmate to pay for costs of medical care for pre-existing injuries constitute[d] deliberate indifference," *id.* at 131;

(3)    Arnold could not "'establish liability under § 1983 merely by showing that the defendant was in charge of others who may have committed a constitutional violation,'" *id.* at 132 (quoting *Phillips v. Tiona*, 508 F. App'x 737, 744 (10th Cir. 2013)); and

(4)    Stivers "reasonably relied on the judgment of the jail medical staff" regarding Arnold's medical care, *id.* at 134.

"The first task of an appellant is to explain to us why the district court's decision was wrong." *Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015). Arnold does not challenge the district court's decision to take judicial notice of Washington County Sheriff's Office Policies 701 and 702. He

8

likewise does not question the district court's conclusion that the policies themselves negate his policy-based claim against Stivers. Nor does he challenge the district court's rationale for rejecting his remaining arguments concerning his claim against Stivers. He instead repeats, almost verbatim, the arguments he presented to the district court. *Compare* Aplt. Opening Br. at 15–24 and Aplt. Reply Br. at 10–15, *with* Aplt. App. at 100–07. These arguments do not call into question the district court's rationale for dismissing Arnold's claim against Stivers and we therefore must affirm the district court's dismissal of that claim. *See Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011) (holding that where "[t]he argument section of [an appellant's] opening brief does not challenge the [district] court's reasoning on [a] point[, w]e . . . do not address the matter").

### III.  Conclusion

We affirm the district court's entry of final judgment in favor of Defendants.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

9