**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**June 27, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

LINDSAY O'BRIEN QUARRIE,

    Plaintiff - Appellant,

v.

STEPHEN WELLS, in his individual capacity; KEVIN WEDEWARD, in his individual and official capacity; DANIEL LOPEZ, in his individual capacity; WARREN OSTERGREN, in his individual capacity; SAUCEDO CHAVEZ P.C.; CHRISTOPHER T. SAUCEDO, in his individual and official capacity; BOARD OF REGENTS OF THE NEW MEXICO INSTITUTE OF MINING AND TECHNOLOGY; LORIE LIEBROCK, in her individual capacity; DR. ALY EL-OSERY, in his official capacity,

    Defendants - Appellees.

No. 21-2090
(D.C. No. 2:17-CV-00350-MV-GBW)
(D. N.M.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **ROSSMAN**, Circuit Judges.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Lindsay O'Brien Quarrie, pro se,[1] appeals two district court orders dismissing some of his claims under Fed. R. Civ. P. 12(b)(6) and granting summary judgment on his remaining claims to defendants under Fed. R. Civ. P. 56 against the New Mexico Institute of Mining and Technology (NMT) and various individuals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND[2]

Quarrie, an African-American, was a student and doctoral candidate at NMT from 2009–2012. In April 2012, NMT terminated him from its PhD program. Quarrie sued NMT in 2013 alleging this termination was racially discriminatory in violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d. The district court ultimately dismissed Quarrie's lawsuit, and this court affirmed that dismissal. *See Quarrie v. N.M. Inst. of Mining & Tech.*, 621 F. App'x 928, 934 (10th Cir. 2015).

After this court's affirmance, to resolve any remaining disagreements and end any further appeals or other litigation, the parties entered into a written settlement agreement. Under that agreement, NMT paid Quarrie $6,000. Quarrie agreed that he would "not re-apply for enrollment at [NMT] now or in the future," and that he

---

[1] Because Quarrie proceeds pro se, we construe his arguments liberally, but we "cannot take on the responsibility of serving as [his] attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[2] The facts set forth here come either from Quarrie's second amended complaint, the well-pleaded allegations of which we take as true when analyzing a motion to dismiss, *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019), and from the parties' undisputed statements of material facts in their briefing on the motions for summary judgment, *see* R. vol. 4 at 528–32.

would " not represent that he graduated from, or received a diploma from, [NMT]."
R. vol. 4 at 388.  NMT agreed to "permanently remove the words 'TERMINATED
FROM GRADUATE PROGRAM' (or any similar language) from [Quarrie's NMT]
transcript . . . ."  *Id.*  NMT further agreed that "no such language shall ever be added
to [Quarrie's] . . . transcript . . . at any future time."  *Id.*

Four days after the parties signed the agreement, Quarrie discovered NMT had
added a notation to his transcript which read:  "no degree earned."  He sent a letter to
NMT stating that, in his view, this notation violated the settlement agreement.
NMT's counsel responded that the language did not violate the agreement because it
did not indicate Quarrie was terminated from his graduate program, merely that he
did not receive a degree.  Quarrie and NMT's counsel continued to exchange letters
regarding the validity of the settlement agreement through late 2015 and 2016.
Throughout this exchange, NMT consistently communicated its position that the
agreement remained in effect.  In June 2016, Quarrie wrote that he had discovered a
copy of the letter terminating him from the PhD program in his academic record, and
that he believed this constituted an additional reason the agreement was null and
void.  NMT's counsel responded that it "disagree[d] with [Quarrie's] assertion that
the [s]ettlement [a]greement is void" and still "consider[ed] the [s]ettlement
[a]greement to be fully enforceable and valid."  R. vol. 4 at 450.

In August 2016, Quarrie wrote NMT reiterating his position that the settlement
agreement was null and void and stating that "upon [his] official reinstatement in the
PhD program in Materials Engineering at NMT and the award of [his] earned

3

doctorate degree, [he] intend[ed] to return the full $6,000 . . . that [he] received as part of the [s]ettlement [a]greement." *Id.* at 456.  He proposed a repayment plan of $500 per month upon his reinstatement.  In October 2016, he sent two checks for $100 each to NMT and the State of New Mexico Risk Management Division.  In December 2016, he reapplied for admission to the PhD program, paying a $45 application fee.  NMT took no action on Quarrie's application and returned the two $100 checks to him in January 2017.  In March 2017, Quarrie sent two checks totaling $6,000 to NMT and the State of New Mexico Risk Management Division. NMT, through counsel, returned both checks, stating again it "consider[ed] the [s]ettlement [a]greement to be binding on the contracting parties."  R. vol. 4 at 472.

Quarrie sued, alleging the failure to act on his December 2016 application for admission was racially discriminatory and violated his constitutional rights. Defendants included NMT, several individuals who worked at NMT, and NMT's attorney.  Quarrie's second amended complaint included five claims for relief. Counts 1, 2, and 4 asserted constitutional claims for libel, slander, and deprivation of property without due process; count 3 asserted a violation of Title VI; and count 5 requested a permanent injunction based on the violations in claims 1 through 4.

The defendants moved to dismiss claims 1, 2, 4, and 5 under Fed. R. Civ. P. 12(b)(6).  Adopting the proposed findings and recommended disposition of a magistrate judge, the court granted the motion to dismiss as to those claims, denying it only as to the request in count 5 for an injunction related to the allegations described in count 3, which was not subject to the motion to dismiss.  The court

concluded counts 1, 2, and 4 failed because they did not meet the requirements of the "stigma-plus" rule in *Paul v. Davis*, 424 U.S. 693, 712 (1976).

NMT then moved for summary judgment on the remaining claims. Following another recommendation of a magistrate judge, the court granted the motion. The court concluded NMT had a legitimate, nondiscriminatory reason for taking no action on Quarrie's application—the settlement agreement—and Quarrie did not present evidence sufficient to establish this stated reason was pretextual.

Quarrie now appeals, challenging both dismissals.

## DISCUSSION

### 1. Dismissal of constitutional claims

"We review de novo a district court's decision on a Rule 12(b)(6) motion for dismissal for failure to state a claim. Under this standard, we must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (italics, citation, and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state a 42 U.S.C. § 1983 claim under the Fourteenth Amendment, a claim of damage to a plaintiff's reputation, standing alone, is insufficient because "any harm or injury to that interest, even where . . . inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or

5

federal law, nor has it worked any change of . . . status as theretofore recognized under the State's laws." *Paul*, 424 U.S. at 712.  Thus, "[f]or a plaintiff to prevail on a claim that the government has violated the Due Process Clause by damaging [his] reputation, that plaintiff must satisfy the 'stigma-plus' standard.  That standard requires the plaintiff to demonstrate both (1) governmental defamation and (2) an alteration in legal status." *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1184 (10th Cir. 2016) (internal quotation marks omitted).

Quarrie argues he met the "stigma-plus" rule because he alleged NMT deprived him of property without due process by accepting his $45 application fee and taking no action on his application.  Initially, we note this argument relates to his fourth claim for relief, "malicious and conspiratorial deprivation of financial property right," R. vol. 2 at 48 (boldface and capitalization omitted), but it does not save his first or second claims for defamation by slander and libel, *see id.* at 45–47.  Because Quarrie does not address the district court's dismissal of either of these claims in his opening brief, he has waived any arguments related to those claims, and we do not consider them further.  *See Folks v. State Farm Mut. Auto. Ins. Co.*, 784 F.3d 730, 737 (10th Cir. 2015).

In any event, considered in connection with Quarrie's fourth claim, we agree with the district court that, while the New Mexico Constitution recognizes persons' "inherent and unalienable rights," including "possessing and protecting property," N.M. Const. Art. II § 4, Quarrie failed to point to any case law or other authority showing this right encompasses the right to receive a response to a graduate school

6

application after paying an application fee.  The court therefore correctly dismissed each of Quarrie's due process claims.

> 2.  *Grant of summary judgment on Title VI claim*

We review the grant of summary judgment de novo.  *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "We examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party."  *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cnty.*, 546 F.3d 1299, 1306 (10th Cir. 2008) (internal quotation marks omitted).

Title VI provides:  "No person in the United States shall, on the ground of race . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  The statute "prohibits only intentional discrimination."  *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).  "The two elements for establishing a cause of action pursuant to Title VI are (1) that there is racial . . . discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance."  *Baker v. Bd. of Regents*, 991 F.2d 628, 631 (10th Cir. 1993).  The parties agreed NMT receives federal financial assistance, so only the first element is at issue.

In claims like Quarrie's involving rejection from an educational institution, we analyze whether there was racial discrimination using the same burden-shifting

7

framework the Supreme Court has established for Title VII employment cases. *See Bryant v. Indep. Sch. Dist. No. I-38*, 334 F.3d 928, 929–30 (10th Cir. 2003). Under this framework,

> [f]irst, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [inaction on the enrollment application]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (internal citations and quotation marks omitted).[3] "A plaintiff shows pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [decisionmaker's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the [decisionmaker] did not act for the asserted nondiscriminatory reasons." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (internal quotation marks omitted).

---

[3] The magistrate judge and district court analyzed Quarrie's claims by reference to *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). Since both *McDonnell-Douglas* and *Burdine* use the same framework, *see Burdine*, 450 U.S. at 252–53 (citing *McDonnell-Douglas*, 411 U.S. at 802, 804), the difference is superficial.

The district court concluded that NMT had a legitimate, non-discriminatory reason for taking no action on Quarrie's December 2016 application—namely, his 2015 agreement not to reapply for admission to NMT—and that Quarrie did not present sufficient evidence establishing this reason was pretextual. Quarrie attacks this conclusion on two grounds: he argues first that he rescinded the settlement agreement and second that the district court overlooked evidence of NMT's mendacity when considering whether its stated reliance on the settlement agreement was pretextual.

Regarding his first attack on the district court's conclusion that NMT's reliance on the settlement agreement was not pretextual, Quarrie argues he had a legal right to unilaterally rescind the settlement agreement because NMT materially breached it by adding "no degree earned" to his academic transcript. He further argues he exercised that right by declaring the agreement invalid and offering to return the $6,000 he received under it. Invoking "the common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally," *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581 (2010) (internal quotation marks omitted), he argues the district court erred in considering whether NMT *believed* the settlement agreement was valid rather than analyzing objectively whether he succeeded in unilaterally rescinding it.

But we have previously rejected Quarrie's proposed approach in cases involving similar contractual provisions barring reapplication. *See Jencks v. Mod. Woodmen of Am.*, 479 F.3d 1261, 1268 (10th Cir. 2007) (concluding employer's

9

reliance on the terms of a settlement agreement in refusal to rehire employee was "one way to reasonably read the contractual terms," and therefore not pretextual); *Kendall v. Watkins*, 998 F.2d 848, 851 (10th Cir. 1993) ("This is not an action for breach of the settlement agreement or to enforce the agreement . . .. Therefore, we need not determine whether the [defendant's] interpretation of the agreement was correct."). NMT consistently maintained the settlement agreement was valid and repeatedly communicated its disagreement with Quarrie's assertions to the contrary. This belief constitutes a nondiscriminatory reason for its refusal to act on Quarrie's 2017 application.

And Quarrie offers no basis to conclude NMT's belief in the continued validity of the settlement agreement was so weak, implausible, inconsistent, incoherent, or contradictory so as to indicate it did not act for that asserted reason. *See Swackhammer*, 493 F.3d at 1167. The settlement agreement did not prohibit the "no degree earned" language, which is consistent with Quarrie's agreement that he would not represent he graduated or received a diploma from NMT. While the settlement agreement did proscribe the phrase "'TERMINATED FROM GRADUATE PROGRAM' (or any similar language)," R. vol. 2 at 70, as the magistrate judge stated in his report and recommendation, the phrases are materially distinct: "'Termination' is by its nature involuntary and misconduct might reasonably be inferred from its use. The phrase 'No Degree Earned' simply states a fact which could have come about by any number of reasons such as a financial inability to

continue with an educational program." R. vol. 4 at 544.[4] Quarrie likewise argues he had grounds to rescind the settlement agreement based on "material misrepresentation, fraudulent inducement, . . . and violation of public policy." Aplt. Opening Br. at 9. But he does not show how any of these theories would have been so clearly apparent to NMT as to indicate its belief in the validity of the settlement agreement was a pretextual basis not to act on his 2017 application.

In his second attack on the district court's conclusion that NMT's reliance on the settlement agreement was not pretextual, Quarrie argues the district court improperly ignored several examples of NMT's mendacity. Such evidence may support a finding of pretext, but it must call into doubt the defendant's stated reason for its decision. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."). The examples of mendacity Quarrie points to include statements NMT made regarding when it added the phrase "no degree earned" to his transcript, when it became aware of some of his attempts to rescind the settlement agreement, and whether the parties reached the settlement agreement during a mediation. *See generally* Aplt. Opening

---

[4] Quarrie did not object to this conclusion in the magistrate judge's report and recommendation, and the firm waiver rule bars him from challenging it now. *See Vega v. Suthers*, 195 F.3d 573, 579 (10th Cir. 1999) ("[A] litigant's failure to file timely objections to a magistrate's [report and recommendation] waives appellate review of both factual and legal determinations.").

Br. at 41–43. He also points to statements NMT made prior to the settlement agreement relating to the circumstances of his termination from the PhD program and its conduct during the litigation of this case. *See id.* at 43–44.

But none of these examples cast doubt on NMT's belief that the settlement agreement precluded Quarrie from applying to its graduate engineering program. Since the settlement agreement was executed, NMT consistently maintained that it was valid and enforceable. Because reliance on the settlement agreement was an unrebutted legitimate, nondiscriminatory reason for NMT's decision, the district court correctly granted summary judgment on Quarrie's Title VI claims.

## CONCLUSION

We affirm the judgment of the district court.

Entered for the Court

Timothy M. Tymkovich
Chief Judge