**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**August 17, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

LS3 INC., a Maryland corporation,

　　Plaintiff - Appellant,

v.

CHEROKEE NATION STRATEGIC
PROGRAMS, L.L.C., an Oklahoma
limited liability company; CHEROKEE
FEDERAL SOLUTIONS, L.L.C., an
Oklahoma limited liability company;
CHEROKEE SERVICES GROUP, LLC, a
Cherokee Nation limited liability company;
KELLY CARPER; DONALD LOPEZ;
GWYNETH ROBE; DANIEL CERMAN;
STEVE CLARK; DEBRA DIX; LEVI
FLINT; GREGORY FRISINA; SIRISHA
GANTI; WAYNE HOPKINS; ERICA
HOPPE; ALAN HUGGENBERGER;
JAKEB HUGGENBERGER; RONALD
JACOBSON; KARL LONG; WILLIAM
MCKINNEY; ISAAC MIRELES; KEVIN
MUIR; FREDERICK PETERS; CAROL
SCHREINER; REX STEFFEN;
NICHOLAS STEVENS,

　　Defendants - Appellees.

No. 21-1385
(D.C. No. 1:20-CV-03555-PAB-NYW)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]

_____

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,

Before **MATHESON**, **BACHARACH**, and **MORITZ**, Circuit Judges.

_____

LS3, Inc. sued Cherokee Nation Strategic Programs, L.L.C.; Cherokee Federal Solutions, L.L.C.; and Cherokee Services Group, LLC (collectively the "Cherokee Defendants"); and 22 former LS3 employees (the "Individual Defendants") for breach of contract, intentional interference with contract, civil conspiracy, and misappropriation of trade secrets.  The district court dismissed these claims under Federal Rule of Civil Procedure 12(b)(6).  Exercising jurisdiction under 28 U.S.C. § 1291, we reverse in part, affirm in part, and remand for further proceedings.

## I.  BACKGROUND[1]

### A.  *Factual History*

LS3 provided services to the U.S. government, primarily through a contract with the United States Department of Agriculture ("USDA").[2]  The Cherokee Defendants are competitors of LS3.  The Individual Defendants are former LS3 employees who now work for the Cherokee Defendants.

_____

except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Except where otherwise noted, these facts come from LS3's Amended Complaint.  We take as true the well-pleaded allegations when considering a motion to dismiss.  *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019).

[2] The services related to a "cybersecurity domain that allows agencies to securely access resources across existing systems and emerging platforms."  Identity, Credential, and Access Management (ICAM), Cybersecurity & Infrastructure Security Agency, https://perma.cc/V8P9-69W6.

2

LS3 lost its bid for a USDA contract to Easy Dynamics. One of LS3's business partners protested the award. As the protest proceeded, the government eventually awarded a "bridge contract" to the Cherokee Defendants, a short-term contract to ensure continuity of services while the government resolved the dispute over who would secure the longer-term contract.

The Individual Defendants had each signed with LS3 either an "Intellectual Property, Non-Interference/Non-Solicitation and Non-Disclosure Agreement" ("IP-NDA") or an "Employment Agreement" ("EA"). Both included "duty of loyalty" provisions, which prohibited the Individual Defendants from interfering with LS3's existing or prospective business relationships. Under the IP-NDAs, Individual Defendants agreed not to "participate or otherwise be involved in competition with LS3 for the award of any contract . . . that Employee knows or should have known LS3 was competing or preparing to compete for." Aplt. App. vol. 2 at 134. Individual Defendants who signed EAs agreed not to "directly or indirectly induce or attempt to induce any customer . . . of the Company to cease doing business with the Company." Id. at 142. The IP-NDAs and EAs also both contained nondisclosure provisions to protect confidential information. Aplt. App. at 135–36 (nondisclosure provisions of IP-NDA); id. at 141–42 (nondisclosure provisions of EA).

In August 2020, Linda Evans, a manager for the Cherokee Defendants, sent an email to LS3's employees who had been working in support of a previous USDA contract, including the Individual Defendants (the "Evans email"). It read:

3

Dear ICAM Team Member,

You are undoubtedly aware of the protests resulting in a delay in award of the new contract replacing LS3 Technologies as the prime contractor on the ICAM support contract. As a result, Cherokee Nation Strategic Programs (CNSP) has been notified **we are being awarded a bridge (interim) contract for four to nine months** while the long-term contract award is completed. CNSP is teamed with two other strategic partners to deliver this work during the bridge period. CNSP and its partners will give **employment preference to current team members** who apply for employment on the bridge contract.

We understand how difficult this uncertainty is for incumbent personnel on a contract, and our desire is to make this a simple and uneventful transition, both transitioning into the CNSP contract, and transitioning out to the eventual winner of the long-term contract.

It is our practice, whenever possible, to **keep team members' salaries intact** – we want to ensure this is as painless as possible! To that end, please **help us help you** by doing the following:

1)  Please complete the attached information form. . . .

2)  Please obtain your most current pay stub digitally, or scan it, or take a photo of it. This should show your rate of pay, hours worked, and the date.

3)  Please "reply all" to this email with both the information form and pay stub attached by NOON LOCAL TIME FRIDAY, AUGUST 14. . . .

4)  Please tell your co-workers who may not check their personal email often to check their email and respond as quickly as possible to this request. If they haven't received this email, please give them my contact information, below, and ask them to reach out to us ASAP.

We're sorry to have to ask for such a rapid response, but we have been given an extremely short timeline by the

4

Government for this transition, to ensure all employees are ready to work on the new contract by September 1.

. . .

One last thing:  I understand some of you have expressed concerns about non-compete agreements you have signed with your current employer.  Please note that under Colorado law, it is unlawful to use force, threats, or other means of intimidation to prevent any person from engaging in any lawful occupation at any place he sees fit. . . .

. . . Please know that **CNSP and its partners will not ask you to provide, nor do we want you to provide, any proprietary information from your current employer.**

Please note that **your salary is not proprietary information** and you are free to disclose the compensation you receive as you wish.

. . .

After you have reviewed this information, I hope you will feel comfortable discussing your future employment with Team Cherokee and providing the requested information.

*Id.* at 105–07.

Ms. Evans attached to the email a one-page questionnaire listing 10 questions regarding job title, ongoing training/certifications, length of employment, hours worked, work equipment, security clearance, salary, paid time off, and benefits information.  The Individual Defendants responded to the Evans email and answered the questionnaire.  They left LS3 to work for the Cherokee Defendants, either voluntarily or after LS3 fired them.

5

## B. *Procedural History*

LS3's amended complaint included claims for (1) breach of contract against the Individual Defendants; (2) intentional interference with contract against the Cherokee Defendants; (3) civil conspiracy against all defendants; and (4) misappropriation of trade secrets against all defendants in violation of Colorado's Uniform Trade Secrets Act, Colo. Rev. Stat. § 7-74-101–10, and the federal Defend Trade Secrets Act, 18 U.S.C. § 1836.  The breach of contract claim was based on two theories—(1) breach of the duty of loyalty and (2) breach of confidentiality.  The defendants filed motions to dismiss.  They attached several EAs and IP-NDAs, the Evans email, and the questionnaire.

The district court, exercising federal question and supplemental jurisdiction, *see* 28 U.S.C. §§ 1331, 1367,[3] granted the motions.  It dismissed

(1) the breach of contract claim, finding the Individual Defendants did not breach either the IP-NDAs or the EAs because the Cherokee Defendants had already won the bridge contract and because none of the information they provided in responding to the Evans email and questionnaire was confidential.

(2) the intentional interference with contract claim because breach of the IP-NDAs or the EAs was a necessary element;

(3) the statutory trade secrets claims because the complaint did not allege misappropriation of any specific trade secrets and the information sought in the questionnaire was not a trade secret; and

(4) the civil conspiracy claim because it was derivative of LS3's other claims.

---

[3] In its amended complaint, LS3 also asserted the existence of diversity jurisdiction.  *See* 28 U.S.C. § 1332.

## II.  **DISCUSSION**

"We review de novo a district court's decision on a Rule 12(b)(6) motion for dismissal for failure to state a claim."  *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (italics, citation, and quotations omitted).  We "apply[] the same standards as the district court" should have applied.  *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)

"[W]e must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  *Waller*, 932 F.3d at 1282. "Conclusory allegations are not entitled to the assumption of truth.  In fact, we disregard conclusory statements and look to the remaining factual allegations to see whether Plaintiff[] ha[s] stated a plausible claim."  *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir.) (citation and quotations omitted), *cert. denied*, 142 S. Ct. 477 (2021).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quotations omitted).

### A. *Breach of Duty of Loyalty*

LS3, challenging dismissal of its breach of loyalty claim, argues (1) the district court erred by considering the Evans email, (2) the email was hearsay, and (3) the

court's determination that LS3 had already lost the bridge contract when Ms. Evans sent the email was contrary to the amended complaint. The Cherokee Defendants argue LS3 forfeited these arguments because LS3 did not raise them in its opposition to the motions to dismiss and waived them through its "failure to argue for plain error and its application on appeal . . . [which] surely marks the end of the road for an argument for reversal not first presented to the district court." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011).

We agree in part. LS3 did not preserve its argument that the district court's considering the Evans email was improper, nor did it contend in district court that the email was hearsay. But LS3 argued in opposition to the motions to dismiss that, according to its amended complaint, the Evans email preceded the award of the bridge contract. *See* Aplt. App. vol. 2 at 182 ("As LS3 stated in the Amended Complaint, by communicating with and providing information to CNSP about not only LS3's business but also about the Employees' intentions to jump ship, the Employees enabled and motivated the government to make the switch from LS3 to [the] Cherokee Defendants." (quotations omitted)).

The district court, relying on the statement in the Evans email that the Cherokee Defendants "ha[d] been notified" that they "are being awarded" the bridge contract, *id.* at 105, found that the bridge contract had been awarded. Looking at the specific prohibitions in the IP-NDAs and EAs, the court further concluded that "the plain language of these duty of loyalty provisions only prevent a current employee from generally interfering with a current or active business opportunity. But because

8

[LS3] had already lost the contracts, [the] [I]ndividual [D]efendants could not have violated the duty of loyalty provisions." *Id.* vol. 3 at 257.

We agree that the duty of loyalty provisions prohibited only interference with a current or active business opportunity. So if LS3 had already lost the bridge contract by the time of the Evans email, its claim for breach of loyalty would fail.

But under standards of review applicable to a motion to dismiss, the district court should not have inferred from the Evans email that LS3 "had already lost the contracts." Aplt. App. vol. 3 at 257. When reviewing a document referenced in a complaint, although a court "may look to the contents of a referenced document itself rather than solely to what the complaint alleges the contents to be . . . such documents may properly be considered only for what they contain, not to prove the truth of their contents." *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1158 (10th Cir. 2018) (quotations omitted). Moreover, the email either did not say the bridge contract had been awarded or was ambiguous on that point. It said the contract was "being awarded." Taking the allegations in the amended complaint as true and construing them in the light most favorable to LS3, *see Waller*, 932 F.3d at 1282, we conclude the amended complaint plausibly alleged that LS3 was still competing for the bridge contract when Ms. Evans emailed the Individual Defendants.

We therefore reverse the district court's dismissal of the portion of the breach of contract claim alleging a breach of the duty of loyalty in the Individual Defendants' IP-NDAs and EAs.

9

## B. *Breach of Confidentiality*

LS3's remaining challenge to dismissal of the breach of contract claim fails. The district court concluded that none of the information that the Cherokee Defendants requested from the Individual Defendants in the Evans email or the questionnaire was confidential, so the court said there was no breach of the nondisclosure provisions. The email explicitly disclaimed any request for confidential information. And although LS3 asserts it "does not concede that the information requested by the questionnaire was not confidential and/or did not seek or sweep up confidential information," Aplt. Opening Br. at 22, it has waived that argument because it has failed to explain why any of the ten questions on the questionnaire solicited protected information. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

LS3 argues the district court prematurely dismissed its breach of confidentiality claim before allowing discovery on what information the Individual Defendants shared and whether that information was confidential. LS3 points to its allegations that, "on information and belief," the information the Individual Defendants shared "was not limited to" what the questionnaire solicited. Aplt. App. vol. 2 at 17. LS3's argument and allegations fall short.

First, LS3 did not advance this argument—that dismissal was premature without discovery—in its responses to the motions to dismiss in district court and therefore forfeited it.

10

Second, because the amended complaint failed to allege what information the Individual Employees shared, the conclusory factual allegations "are merely consistent with," and not indicative of, the Cherokee and Individual Defendants' liability, and therefore "stop[] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quotations omitted).

Third, LS3 cites no persuasive authority to support its contention that the court should have allowed discovery before deciding whether to dismiss its claim. And because LS3 did not adequately plead its breach of confidentiality claim, it was not entitled to proceed to discovery. *See Ghailani v. Sessions*, 859 F.3d 1295, 1304 (10th Cir. 2017) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . no longer suffice to 'unlock the doors of discovery' . . . ." (quoting *Iqbal*, 556 U.S. at 678)).

## C. *Intentional Interference with Contract and Civil Conspiracy*

Because the district court dismissed all aspects of LS3's breach of contract claim, it also dismissed the intentional interference with contract and civil conspiracy claims. Both require LS3 to prove breach of the underlying employment contracts. *See Mem'l Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207, 210 (Colo. 1984) (recognizing liability for intentional interference requires "inducing or otherwise causing [a] third person not to perform [a] contract" (quoting Restatement (Second) of Torts § 766 (1977)); *More v. Johnson*, 568 P.2d 437, 440 (Colo. 1977) ("In a civil conspiracy action, the conspiracy is not actionable *per se*.").

We reverse the dismissal of those claims to the extent they are derivative of LS3's claim for breach of the duty of loyalty provisions of the IP-NDAs and EAs.

### D. *Misappropriation*

LS3's challenge to the district court's dismissal of its statutory claims for misappropriation of trade secrets fails because the amended complaint did not identify any trade secrets that may have been misappropriated.  Under Colorado's Uniform Trade Secrets Act, "[t]rade secret' means the whole or any portion or phase of any . . . information relating to any business or profession which is secret and of value."  Colo. Rev. Stat. § 7-74-102.  Similarly, under the federal Defend Trade Secrets Act, information is protectible as a trade secret only if it "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3)(B).

The amended complaint lacked allegations identifying the information the Cherokee Defendants acquired from the Individual Defendants that may have been a protected trade secret.  In fact, LS3 acknowledges that it "could not specifically say exactly what trade secrets were stolen," but it argues that providing this information is "the function of the discovery process under a notice pleading standard."  Aplt. Opening Br. at 27, an argument it failed to make in district court.  And LS3 again

fails to cite convincing authority for its discovery argument.[4]  Under *Iqbal*, because LS3 failed to allege what trade secrets the Cherokee Defendants misappropriated, its allegations "stop[] short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (quotations omitted).  LS3's failure to state a plausible claim precluded it from proceeding to discovery.  *See Ghailani*, 859 F.3d at 1304.  We therefore affirm the district court's dismissal of LS3's claims for misappropriation of trade secrets.

## III.  CONCLUSION

We reverse the district court's dismissal of the portion of LS3's breach of contract claim alleging the Individual Defendants breached the duty of loyalty provisions of the IP-NDAs and EAs.  We reverse the dismissal of LS3's claims for intentional interference with contract and civil conspiracy to the extent those claims are derivative of LS3's claims for breach of the duty of loyalty.  In all other respects, we affirm the judgment of the district court.  We remand for further proceedings consistent with this opinion.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[4] In its reply brief, LS3 cites *SGS Acquisition Co. Ltd. v. Linsley*, 352 F. Supp. 3d 1109, 1122 (D. Colo. 2018), but the district court's summary judgment order in that case did not address pleading standards to survive a motion to dismiss.